I'd like to begin the oral arguments. I'd like to express the appreciation of the Court of Appeals for the Federal Circuit to the generosity of Chief Judge James Spencer from the Eastern District of Virginia. He normally is sitting in the trial court in Richmond and has agreed to supplement our judicial force here and join us, this panel and another panel tomorrow, so we thank him and we welcome him. Second preliminary point of business is to note that two cases on the panel's list will be submitted without argument just on the briefs later today. Those are Appeal 7149 from 2008, Voss v. Department of Veterans Affairs, and Appeal 3078 from 2009, Armatello v. Merit System Protection Board. On the argument list, we have four cases. The first two will be argued together. They are Phillips v. Department of Veterans Affairs, Appeal 7124, and Davis v. Department of Veterans Affairs, Appeal 7142, both from 2008. Mr. Chomsky, good morning to you. Welcome to the Court. Please proceed. You have 15 minutes. We'll give you a little additional time if it's needed, but plan on using 15 minutes and then five minutes for rebuttal but covering both cases in both appearances. Very well. Thank you. Please proceed. Thank you, Your Honor. Mr. Chief Judge, may it please the Court. I'd like to begin with the Phillips case, if I may. In the Phillips matter, in order to reverse the decision below, the Court really needs to address three basic issues. First of all, whether an AJA claim survives or is survivable. Second of all, whether Ms. Harris is an appropriate substitute on the AJA claim. Then once those two predicates are dealt with, whether there was any cause for the Veterans Court to withdraw its mandate here. Now, on the survivability question, that ends up being quite a straightforward one. It's been clear under Supreme Court precedent going back well over 100 years that a remedial claim survives and the Supreme Court, this Court, and the Veterans Court all have held that AJA is a remedial statute. That then brings us to the question of substitution. On substitution two, we think the answer ends up being reasonably straightforward. Ms. Harris moved to substitute and in the Veterans Court, the Secretary declined to oppose, formally acquiesced in Ms. Harris' substitution. Substitution in what? Substitution on the AJA claim. That had previously been filed? Correct, Your Honor. By the Veteran? Well, the claim was filed on the Veteran's behalf. It was filed by his counsel. It was filed by his counsel shortly after he died. So Ms. Harris then moved to substitute on that claim and the Secretary declined to oppose the motion to substitute. It's quite clear in the record. We filed the motion and it was unopposed. Once you move past the questions of survivability and substitution, you're left with what ends up being a reasonably guarded variety AJA case. You have an error that was committed by the board, an error that was conceded by the Secretary by way of the joint motion for remand and that then resulted in the remand order and it's a remand order of the sort that this court repeatedly has recognized in Kelly and former employees of Motorola, among other cases, renders one a prevailing party for AJA purposes. Now, what about the principle that the underlying claim of the Veteran expires when the Veteran expires? That's true, Your Honor, and some variant of that intuition seems to have been what drove the Veterans Court in its decision here and that was candidly where it committed its most serious error. It interpreted this as... Is that principle not true? That principle is true as far as it goes, but it has only limited applicability here. Why is that? Because this is not a claim for survivor's benefits under 5121. So what the Veterans Court reasoned here is that under this... This is just a pure AJA case. The Davis case has both the survivorship and the AJA in it. I gather there's no issue of survivorship of the underlying claim in this case. That's exactly right. In Phillips itself. That's exactly right, Judge Bryson. I think it's important to distinguish between the two cases. Davis is, in our view, even an easier case for that reason. It should be a straight remand under pageant because the Veterans Court erred in recognizing that there was, in fact, a valid 5121 claim. Phillips is only an AJA case, and so going back to your question, Chief Judge Michelle, the Veterans Court here erred in its interpretation of pageant, and what it said was, in order to substitute in a Veterans case, and it sort of spoke generally about Veterans cases, you have to be a 5121 substitute. But pageant didn't say any such thing. Pageant simply said, in evaluating whether nunc pro tunc relief is available, whether a judgment should be issued nunc pro tunc, we looked to see whether there's an appropriate survivor. I'm sorry, an appropriate substitute. In pageant, the question was substitution under 5121, and so pageant was naturally looking at 5121. But that doesn't answer the separate question, whether someone's an appropriate substitute for AJA purposes. When you're looking at AJA, you look at Veterans Court Rule 43 and the general principles that would govern in any case where you have an issue about substitution. It's only the sort of specialized nature of substitution under 5121 and survivability of 5121 claims that creates sort of special problems where you have a 5121 claim, but whereas here you don't, where you're just talking about a straight AJA case, then you have a very different analysis. The problem here, I take it, is principally about one of timing. When the death occurred in the course of the various events that transpired before the Court of Appeals for Veterans Claims, that's essentially what we're really having to wrestle with. So help me out with what would have occurred if the, I take it, if the death had occurred, let's say, the day after the notice of appeal was filed, but for whatever reason, it wasn't known to the counsel for either side that that had occurred, but then the counsel had arranged for the agreed-upon joint motion for remand, and that had been submitted. Would this case come out differently in your view? I'm making sure I understand the hypothetical. So the veteran dies before the case is submitted for decision, but then it ultimately is decided. But it ultimately, well, let's say that it was, yeah, okay, we'll go all the way. Here's the difficulty I'm having with Judge Bryson. I mean, there are a couple of moving pieces here. There are, and I'm having difficulty with it, too. Can you tug on a couple of them? There are two of them that strike me as critical. One is whether the veteran died after the case was submitted, and if the veteran dies or any party died after a case is submitted, then at that point, you have all of the non-parton cases that then speak to the significance of the moment of the case's submission. So that's one critical... And then we get into the whole question of whether in this particular circumstance the case is submitted as of the time of the submission of the agreed remand. And on that issue, it seems to me that the answer is reasonably clear under any normal understanding of what it means to have a case submitted. There's nothing further for any of the parties to do. But going back to the hypothetical, and the reason that, apologies, I'm not giving you an entirely straight answer, the second critical piece is whether the judgment is issued and whether the mandate is issued, because... When you say has issued, before the death is discovered, you mean? Correct. And so here, we're on the right side of both of those lines. The death didn't happen. Mr. Phillips didn't die until after the case was submitted. And moreover, a final judgment was entered, and the mandate issued in this case. And so you have both on the front end the sort of finality interests that come into play and the equitable interests that the non-parton cases bring to bear where you're dealing with a submission point. And you also have the separate finality interests that attach to the issuance of the mandate. And it's on the second question that I think the Veterans Court in this case, and candidly in a whole run of cases, at least leading up to this court's decision in Padgett, has gone pretty badly astray. That the approach of the Veterans Court seems to have been, if a veteran dies, case is moved, regardless of whether the mandate issues, we're going to vacate. And we're going to withdraw our mandate to vacate. If the veteran dies at any point before the issuance of the mandate. Correct. Correct. And that is not a... No matter who it's discovered. That's exactly... It's discovered five years later. I can't say that I've seen a case where it's been five years later, but that seems to be the rule that's being applied. And that doesn't take proper account of the finality interests that attach to the issuance of the mandate. And so going back to what the Veterans Court did here, and sort of thinking about the timing issue, we have a case in which there was error in the board. It was recognized by the secretary and by counsel for Mr. Phillips, who filed a joint motion for remand. The court entered a remand order, and the mandate issued. It is the type of remand order that this case repeatedly has recognized renders a party prevailing for purposes of EJA. The secretary never has suggested that there's any basis that an EJA award wouldn't be appropriate here. And so you have these finality interests attaching at every step along the way. But the Veterans Court, sort of as a matter of course, says, well, someone died, so we've got to vacate, so we've got to recall the mandate. And that has things absolutely backwards. Well, you sorted out the two moving parts very clearly, I thought. What I wanted to make sure I understand is, what would your position be if, with respect to the front end, our first moving part, the death had occurred prior to the submission of the case? If the death had occurred prior to submission? Even though the second half was satisfied. That is to say, the death occurred prior to submission, but nobody knew about it until after the mandate issue. I think in a case in which the parties have died, nobody knew about it, and the mandate issue, the interest in finality would still be sufficient that the judgment should stand. And that, in some sense, is no different than any other case in which there are changed circumstances. If this court issues a decision today, and the judges of this court come to find out five years later that there was some problem with that, there are procedures for that. Probably not. Perhaps there would have been fraud on the court, and under those circumstances, for instance, Calderon, which is sort of the seminal Supreme Court case talking about recalling of the mandate, would say there would be the type of extraordinary circumstances that would justify recalling the mandate. But it's certainly not correct to say that merely because someone died, and you find out about it after the mandate issue, as a matter of course you recall the mandate. Is the decision of a court, here the Veterans Court, but let's just say a court, as to whether to recall its mandate when it later learns of the death of the litigant, is that a discretionary decision or is that a mandatory decision under some legal rule triggered by certain facts or what? The articulation of the standard of review has been that the reviewing court applies to abuse of discretion review. That being said, the test for whether the mandate should be recalled is extraordinary circumstances, and the Veterans Court here certainly identified no extraordinary circumstances. For all of the reasons I've been giving my answer to Judge Bryson, it seems to me that the death of a party, just like any other changed circumstance or any other potentially mooting event, is an utterly ordinary circumstance that can be dealt with in the ordinary course. Well, what do you mean dealt with in the ordinary course? Well, it'll differ depending on the case. In some cases a party dies and someone can be substituted in for them. In some cases a party dies and it renders proceedings moot. In some cases a party dies and on remand an inferior court can sort it out by, for instance, modifying an injunction. So are you saying then that we necessarily would have to find that the Veterans Court abused its discretion in vacating its mandate because the death of the Veteran can't qualify as an extraordinary circumstance, and therefore in addition to abusing their discretion they actually acted beyond their authority? I don't know that I would want to take on the burden for myself of saying that it is necessarily always an abuse of discretion to say that the death of a Veteran is an extraordinary circumstance. I do think that under the circumstance of this case the court did not even attempt to articulate what is extraordinary about the circumstances here. And this goes back to the answer I gave a moment ago. It seems to me that what happened is the court erroneously applied a rule that the Veterans Court has been applying as a matter of course in these Veterans cases, which is that if someone dies you have to vacate and you may have to recall the mandate to do it, and it's been this sort of routinization. So, yeah, but putting aside the pattern, just looking at this one case, as I understand what you're saying, your position seems to be, at least on the facts here, the decision by the Veterans Court to vacate was an abuse of discretion and therefore has to be reversed by this path. Yes, Your Honor. Then what is it about the facts here versus some other Veterans case that would say, well, it's an abuse of discretion for sure here. It might not be in some other circumstance. What's the circumstance on the other side of the mud? The easy example is the one that Calderon itself gives, and it goes back to the Supreme Court's decision in, I think it's Hazel Atlas Glass, which... No, no, but in the context of a Veterans Court adjudication, what facts put it on the abuse of discretion side of the line versus what other facts would put it on the no abuse of discretion line when the Veterans Court chooses to vacate its mandate? Right, and that's what Hazel Atlas Glass speaks to, is that the Supreme Court has said in a case, for instance, in which it's determined that there's fraud on the court, that surely constitutes an extraordinary circumstance. I want to make sure not to lose sight of one point here, as I see my time is getting short, which is that even if the court were to conclude that it's appropriate to recall the mandate under the circumstances here, that only gets you to the question of whether non-protongue relief is available, because even if... Before you go there, I want you to answer the question posed to you. What is it about this set of facts that would make this an abuse of discretion? The court has the discretion to decide whether to recall this mandate. It decided to recall the mandate and listed death as the reason why. What is an abuse of discretion about that? Well, let me try to answer the question again, Your Honor. I'm not sure I have a clearer answer, which is to say that if the only fact that is at issue is that one discovers after the fact that the veteran had died previously, there is nothing extraordinary about that. There is nothing that remotely satisfies the test for recalling the mandate, and so it is an abuse of discretion. If there is nothing more, as there was here, than simply the fact that the veteran died less than a week before the judgment was entered, it renders this an extraordinary circumstance. If I can, I just want to briefly make sure to... Don't worry so much about the time. You'll get your full five minutes for rebuttal, and of course, you need to cover the Davis case as well, so don't worry too much about the time. Is there more to say on the circumstance of the facts of Phillips, or should we be returning to Davis? Yeah, just briefly... I think you were about to say, I think, if I understood where you were going, that you still have the new Protonc issue, even if the mandate issue is resolved instantly. Exactly, Judge Bryson, and those end up being alternate bases here, so even if the court concludes that it's not an abuse of discretion for the court to have withdrawn its mandate under the circumstances here, that only leaves us with the question of whether the judgment, the remand order, should be issued non-Protonc, and Padgett and the D.C. Circuit's decision in Wile and 130 years of Supreme Court cases teach that this is the paradigm case, and that's the language this court used and the D.C. Circuit has used for non-Protonc relief. In a case in which a party dies after the case is submitted, but prior to judgment, the Supreme Court has mechanically entered judgment's non-Protonc. It ends up being a ministerial act, and the only reason for doing it is to solve a mootness problem that might otherwise arise, and so even if you get back into the judgment here, the only proper result would be to reenter the judgment non-Protonc, which leaves you with a valid judgment that Mr. Phillips is the prevailing party, which then forms the predicate for the EJOTA warrant. The same question I asked with regard to recalling the mandate. Is the decision of the Veterans Court or any court as to whether to reissue its substantive ruling non-Protonc, is that a discretionary decision, or is that one that's on autopilot, they just have to do it? No, Your Honor, I believe that that has been treated as a question of law, and I don't have a site handy, but I'm fairly certain that Padgett itself addressed that and treats it as an issue that's dealt with de novo. I'm not talking about what is our standard to review the Veterans Court decision. I'm trying to understand what's the nature of the Veterans Court decision when it decides whether to reissue its favorable ruling on a non-Protonc basis, treating the case as if the veteran hadn't died. I see, Your Honor, and there actually my answer is even better. There, the underlying substantive question and the analysis that the Supreme Court articulated in Mitchell v. Overman, you look at what justice requires, and the Supreme Court has held that justice requires under circumstances like these that the judgment be issued non-Protonc, and I think it's useful to think about the context of this case, which is, of course, a case in which everyone agreed that the board erred, and everyone agrees, or at least no one has disputed, that had Mr. Phillips survived, this would have formed a valid predicate order for an award of Egypt fees, and so when you're thinking about what justice requires under these circumstances, the only question is, why wouldn't the judgment be reformed non-Protonc? There is no equitable interest on the other side here. The government hasn't even attempted to articulate one. The only interest on the other side appears to be a desire not to pay attorney's fees, and understandable though that might be, that surely doesn't speak to what justice requires under these facts. So, getting to the Davis case, if I may, Davis ends up, I think, being relatively straightforward. There are two principal differences between Davis and Phillips, and each of them make Davis an easier case. One is that in Davis, there is a claim for accrued benefits under 5121, and the second is that on the sort of pure Phillips issue, Mr. Davis died not only after the case was submitted, but indeed after judgment was entered, and so in thinking about the finality interests we were discussing earlier, they push even more strongly in the veterans favor here. So, on the pure 5121 claim, it seems to me that the sensible result here is at a minimum a straight vacator and remand to evaluate substitution. Now, obviously, the court could do quite a bit more. It seems to me that the substitution issue has not meaningfully been contested, and it also seems to me clear as a matter of law that an EGLE award is appropriate, but at a minimum, a simple vacator is plainly warranted in Davis. To the extent that it's pertinent, I'm having some difficulty trying to read Pelea and Padgett consistently, one to the next. Is it fair to say that Pelea is a case in which the proceedings were at such an early stage, or in any event, the proceedings had not gotten to the point that Ms. Pelea had made any substantial progress towards an award, that there was no advantage to a substitute party for being substituted for her? I think the easiest way to read Pelea, Judge Bryson, is to look at Hyatt, which is this that interprets Pelea, and Hyatt limits Pelea and says Pelea principally was a case in which the benefits could not have survived. It was not only a 51-21 claim, it was a question of survivorship of a 51-21 claim, so you're even one step of mortality down the line in these cases. So Hyatt says that that's really what Pelea was about, and to the extent that it was opining further on how far you would have to go to eventually get benefits, it wasn't necessary to the decision. Is the bottom line implication that any apparent inconsistency between Pelea and Padgett has been removed by Hyatt? That's the way I read the case, Your Honor. I would be less than forthright if I didn't concede that on their face there is at least a little bit of tension between Pelea and Padgett, but I think Hyatt resolves that, and not only does it do so, but it does so in a way that makes the rules relatively easy to implement going forward, and I think Hyatt ends up being quite straightforward in its application here. Do you think that Hyatt, the most recent of the three cases, is entirely consistent with the two precedents? I don't see any inconsistency, Your Honor, and in all events, it seems to me that Hyatt's application is quite straightforward on the facts of this case. The argument that the Secretary made... Before you go to that, is there a case to be made that this panel should recommend to the court that it go in bank in Phillips and Davis in order to straighten out apparent conflict, or actual conflict, or partial conflict, or whatever the devil it is, between Pelea and Padgett? I don't know that that would be warranted, Your Honor. It seems to me that on bond for you would be extraordinary on these circumstances where Hyatt has explained that Pelea had a straightforward holding, which was that under no circumstances could those benefits be awarded, and then went on to say toward the end, and in any event, it's sort of an odd case because no one was anywhere close to getting benefits. I think Hyatt properly explains Pelea in that way, and so to the extent that there might have been any slight inconsistency, it certainly wasn't on any holdings of Pelea and Padgett, and certainly is clear as a matter of judicial administration going forward following Hyatt, how the cases are to be implemented. I do want to just speak briefly to the Hyatt point here because it is clear, and the Secretary forthrightly recognized in his own 28-J letter, that the argument that the Secretary had been advancing in Hyatt and had advanced here in Davis, at least in their initial briefing, no longer is available after this Court's decision in Hyatt, which is to say it is not correct that a veteran has to have established, finally and formally, an entitlement to benefits for some substitute to be able to go forward. It would be bizarre indeed if the Court had held that. It would fly in the face of settled standing principles, which are that one doesn't have to show that one's going to win in order merely to be able to proceed, and so after Hyatt, the rule is, and again, consistent with these fundamental principles of standing, that if one is an appropriate substitute and there is a chance that one could obtain benefits once the matter is sent back to the Board, then one should be able to do so. So the discriminator is chance versus no chance? I'm not sure I understand the question. Well, I thought you said if the person could establish that there's a chance they might win, that that's good enough. You don't have to establish that they would definitely win. I see, Your Honor. Chance is perhaps a sloppy formulation on my part. I'm not talking about your language. I'm just trying to understand what's the divider here? Yes. You say it's real clear after Hyatt who will be able to substitute and who won't, and I'm trying to understand, well, what is the yardstick that Hyatt tells us when you have to measure who gets in and who doesn't get in? Hyatt tells us two things. It tells us, first of all, that the suggestion that the veteran has to have established a formal entitlement to benefits, that argument is wrong. That's off the table. And then it establishes a particular test for determining whether one has standing to go forward. Which is what? I apologize. I read it and I couldn't understand it. Maybe you can interpret for me. There's a formulation, and I don't have it at hand, but it amounts to, on my understanding, the usual standing analysis. You have a potential stake in the outcome. Is your op scored? And for a substitute who has a chance to establish an entitlement to benefits going forward, that test is satisfied. And I think what is instructed... If it's clear that the person doesn't have a chance, then they can't substitute. Correct. And that's the second part of Hyatt, and that's what I was going to get to, because it sort of sets the other bookend. In Hyatt, the veteran or the substitute said, what I'm going to need to do on remand is I'm going to have to get these particular records. That was the error below. I'm going to have to get these other things that aren't in the file, and I'm going to want to use them. And this court was able to say, as a matter of law, you won't be able to use those things. Those are not, quote-unquote, in the file. Because you can't go into new evidentiary matters that aren't in the claims file or constructively in the claims file. Exactly, Your Honor. And there's a red that says exactly the same thing. And so this court was able to say, we know now, we know today, there is no chance you're ever going to win, because the only thing you want is stuff we know you can't get as a matter of law. And so that sort of sets, again, a sort of outer boundary where you can't use. You may be able to get it, but you can't use it. Correct. It is as a matter of law, outside of the record for decision. And so Hyatt kind of sets these two parameters. On the one end, you don't have to show that you're going to win. On the other end, if we know you're going to lose, there's no sense going forward. There's some chance, but that doesn't have to be the standard. Exactly. But in between there, to the extent that you have some chance going forward, this is just usual standing analysis. And I think in any other context, it wouldn't seem quite so complicated. It's, again, do you have a stake in the outcome? And here, in Davis, there isn't any real question about that. The Secretary has sort of suggested that there might be some need to get some additional materials that are currently not in the file, but there are ample materials in the file we've cited to them in our briefs, and I don't want to take more time walking through them. And the factual determination, whether those are adequate, is something that honestly might be outside of this Court's jurisdiction in any event to determine. Let's hear from the government, and as I said, you'll get your full five minutes of rebuttal for the two cases. Thank you, Your Honor. Thank you. At least one of us needs a lot of help here. So I hope you can be very, very clear and very, very logical and stay tightly grounded in precedent. Yes, Your Honor. May I please report? The general rule is that veterans' benefits claims die with the veterans. The only exception that's been established to that rule is this Court's decision in Padgett, which said that an accrued benefits claimant could substitute for the veteran in certain cases. Here, there is no accrued benefits claimant in either of the cases, and therefore, there's no opportunity for substitution, either in the Davis case to pursue an accrued benefits claim or in either case to pursue an AJA claim. Starting with the Phillips case, it's admitted that Ms. Harris... When you say there's no accrued benefits claimant, maybe I misunderstood exactly what you said, but that is what Ms. Stanback wants with respect to the first part of of the Davis argument, correct? She wants to have an opportunity to recover the accrued benefits. Yes, that's what she's requested, but she has never made a claim for accrued benefits. Under 5121, the accrued benefits claimant has to make a separate claim for accrued benefits. Well, she says she's made an informal claim. And that's never been determined either by the Board or the Veterans Court, and it's certainly not an issue that this Court can consider in the first instance, whether or not her submission to the Veterans Court constituted an informal claim. But wouldn't we have to, assuming we were to conclude that, had she made an informal claim, she would be eligible for benefits, wouldn't we have to send that back to the Veterans Court in order to determine whether, in fact, she had made an informal claim? If the issue in this case were the separate claim of an accrued benefits claim, then that would be the issue. But that's, again, an accrued benefits claim is separate from a claim for substitution. Here, the issue is solely the matter of substitution. When you say here, which case are you referring to? Both cases, but specifically in response to the question in David's case, the issue is only substitution. Well, yeah, I'm not sure I understand you. Maybe it's my, I'm just not following it. She is saying, I am entitled to come in and substitute under 5121. I am one of the people who, under 5121, is entitled to come in and get accrued benefits, right? Yes. So, when you say it's a question of substitution, not accrued benefits, I'm not sure I understand. She wants to be substituted and to get accrued benefits, right? Right. And those are two separate issues. And here, the issue is substitution. And under PAGIT, she can only be substituted if there's a continuing relevance of the veteran's claim as to her, which there is not in this case. Because in this case, the remand was to verify alleged structures related to the veteran's PTSD and because there was a medical opinion relied upon that was considered to be inadequate. So, assuming that this case went forward from the veteran's court remand back to the board, there would necessarily be required a consideration of new evidence. Well, I think, if I understand the other side's position, they're saying, we'll take our chances with the new evidence problem, the fact that we can't get at new evidence, at least with the doctrine that evidence that's in the claims file includes things that are constructively within the claims file, as the veteran's court has construed that. They're saying they'll take their chances on that. They think they still have enough in the file so far to potentially win the case. That wasn't an issue that was decided by the veteran's court, as I read their opinion. Therefore, again, we have to remand on that if we decide that this is a valid substitution and the claim hasn't expired. Not necessarily, because it's clear under 5121 that new evidence cannot be considered. I understand. I understand. They're saying, even given that new evidence can't be considered, we've got enough to prove our case. As a matter of law, however, this court can look at the terms of the remand and say the remand appears to require that a new medical opinion be obtained, and as a matter of law, a new medical opinion would not be something that was in the file at the date of the veteran's death. This court could consider that in the first instance without remanding. Simply say, as a matter of law, and this court said in Pelea, as a matter of law, there is no way that Ms. Standback could go back and prevail on an accrued benefits claim because there's nothing in the file at the date of death that would support an accrued benefits claim. That's what this court did in Pelea, and the court could make a similar purely legal finding here, that she could not pursue the accrued benefits. I don't understand what you're saying. You seem to be saying that the evidence already in the file can't suffice. How are we allowed to determine that? That seems like the ultimate fact-finding, fact-laying, credibility-determining type of decision. I thought that's what our jurisdictional statute absolutely precluded us from ever doing. It's not necessarily a fact-finding decision, though, because the board said, as a matter of fact, it's something that this court does not have to review, that the medical opinion relied on was inadequate, which means, presumably, that a new medical opinion needs to be addressed, and a new medical opinion, as a matter of law, could be considered not something that was previously in the file at the time of the veteran's death. It still sounds like you're asking us to assess the probative force of the existing medical opinion, and I'm not comfortable that we have the authority to do that. I would not be comfortable with assessing medical opinions, but to say that a new medical opinion, which is required by the board, or appears to be required by the board, is new evidence, could be a legal decision. But even if this court didn't reach that issue and determined that there was an informal claim for approved benefits, there's still the issue of the timing here, which is the real issue in this case, the timing of the judgment and the mandate, which the judgment was prior to Mr. Davis' death, but then the mandate was issued after Mr. Davis' death, so there's still a problem here with having a final judgment in terms of the EJAC application. I don't understand what you mean. That is, even assuming that there is... I guess I'm going to the EJAC point more at this point than the approved benefits claim, but there's still a problem here on the EJAC claim, which she's claiming in Davis and in Phillips both is an EJAC substitution, which is that there's no final judgment here in either one of the cases, and therefore, an EJAC claim cannot be pursued based upon the fact, because as this court affirmed in the Zavalkin case, it approved of the veterans' court's practice of dismissing a case if the veteran died while that case was pending for the veterans' court, and that's exactly what the veterans' court did in these two cases, followed its practice that's been approved of this court of dismissing a case if there is no final judgment. Again, the only applicable exception in that area would be pageant, which would not permit substitution in either one of these cases for the EJAC claim, because the EJAC claim does not fit the requirements for substitution. Final judgment is the trigger in the EAJA statute? Yes, final judgment is specifically, the EJAC statute specifically says that a judgment must be final. And you're saying, if I understand you, that here there is no final judgment, because what looked like a final judgment has now been erased by the veterans' court, right? Yes. But Mr. Shimsky said the erasure was illegal, and therefore, rather than the absence of a final judgment, we do have a final judgment. Help us out. The erasure was proper. The veterans' court properly followed a procedure that's been approved by this court of dismissing a case that has not reached final judgment prior to the veteran's death. Final judgment being defined as the issuance of the mandate? Yes, that's correct. We've held that if the veteran dies any time up until the instant the mandate is issued, that the appellate judgment has to be erased? This court has not specifically held that, but this court has held that the mandate is issued. Well, I thought you said we've approved the practice of the veterans' court in doing something, and I'm trying to get it very precise in my mind. Well, exactly where did we approve it, and what did we approve? What were the facts there? Was that a case where somebody died the day before the mandate issued, and we said even there has to be thrown out? No, it was in the Zavalkyte case. In that case, the veteran died before the case was submitted, and this court had approved of the practice of the veterans' court in that instance of dismissing and vacating the underlying board decision. Well, that's the case that exemplifies my hypothetical to Mr. Shumsky, in which the veteran dies at some point after the filing of the notice of appeal, but before anything has happened in the case that you could fairly consider either to be decision or submission of the case. Now, his argument is that in this case, given the unusual nature of the disposition or the proposed disposition where the parties agreed on a joint remand order, that that constituted the effective equivalent, at least, of submission. Why isn't that right? Well, under the veterans' court's secular case, which while not controlling on this goes through an extensive reasoning of what constitutes submission of the case, under that secular case, submission is finishing the legal presentation of the issues to the court. In the case of a joint remand, there is certainly a joint remand motion. There's certainly a possibility that the court will deny that motion, in which case the parties will not have completed their presentation of legal issues to the court. But there's a possibility, for example, that after argument in a case, when we say the case is submitted, that we will send the parties a request for a post-argument briefing and the case will be ginned up again, so to speak, and unsubmitted, if you will. I don't see the highly speculative and seemingly unlikely prospect of the courts saying no to the parties as being the kind of thing that you would normally think renders the motion something other than what is reasonably, can reasonably be expected to be the last thing the parties are doing in the case. The only thing remaining, really, is for the court to act, right? Which is what happens when we say the case is submitted here. Sure, the only thing remaining in terms of the motion to remand would be for the court to act on that motion. But if the court were to deny the motion, there could be further briefing. The other issue is... Has the court ever denied a motion to remand that shouldn't be filed by the secretary and the veteran, ever? This court, sir? No, no, no, no, the veterans court. I'm not aware of a situation where that's happened in the veterans court. Well, I'm not either, which seemingly would be exceedingly unlikely. It's hard for me to imagine a circumstance in which the veterans court would say, well, we understand the secretary wants to but we're not going to allow it. What basis could they possibly have? I'm not aware of a case in which that's happened on a remand, but certainly in this case here, in the Davis case, it happened on a joint or an unopposed motion for substitution. So it certainly happens that a motion that's unopposed or joint has been rejected by the veterans court. So that is a possibility. The other issue here is that even if we... No, no, but the question is limited by remand, where both parties say a remand is necessary. You seem to be saying that the court might disagree and deny the motion. I can't imagine any basis for denying such a motion. A remand motion, not a substitution motion or some other kind of motion, a remand motion. That's what we have here, a remand motion. There might be, in some instances, the veterans court might believe that it can decide the case as is without remanding for, usually the remand is for further investigation into the evidence. No, no, no, the typical secretary's motion, I've read a lot of these. The typical secretary's motion says the board made a serious error. Therefore, rather than continuing to litigate here in the veterans court, we admit the error. We ask you to send us all back to the board to fix the error and have a proper proceeding of the board. So where the secretary has conceded that the board decision is tainted, how is the veterans court going to say, no, no, no, we don't agree. We think the board decision is fine. We deny the joint remand motion. That would, again, be unlikely, but not impossible. But the other issue is assuming that the merits case had been considered submitted, the EJIA application portion of the case had not been submitted. No EJIA application was even filed, or there was an EJIA application filed, which happened after the death, but there was no briefing ever on the issues of the substantive EJIA application, whether the veteran was a prevailing party and the substantial justification issues. So if we're looking, as Mr. Phillips suggests, that we should look at the EJIA statute specifically to determine the issues in this case, we're looking at EJIA, then the EJIA claim certainly was not submitted prior to the veteran's death. That would preclude applying the tangent requirements, the case or controversy, whether it would adversely affect the survivor and whether the case was submitted. I'm sorry, I didn't follow that. Tangent would be precluded because what? Well, tangent requires three factors for determining whether there can be a substitution in a veteran's case. One is the case of controversy, the Article III standing. The other one is the veteran's court standing, whether the person requesting substitution would be adversely affected by the board decision. The third requirement of tangent is that the issue has to have been submitted prior to the veteran's death. Here, the EJIA issue was never submitted prior to the veteran's death. There's no dispute that there was never... Let me remember, was tangent an EJIA case or a substantive veteran's claim case? Tangent was a substantive veteran's claim case. So then why does that control the EJIA issue? Well, it controls the substitution issue because what Ms. Harris is attempting to do is to substitute into the merits case to pursue an EJIA claim. The EJIA claim is collateral to the merits case. It's not an entirely separate issue. So there has to be substitution into the merits case in order to be able to pursue the EJIA application. Pursue? Hold what precedent? Because if Ms. Harris can't be substituted into the merits case, then the merits case has not reached a final judgment, and therefore, there can't be any EJIA application. There's no dispute that there can be an EJIA application. If there's a final judgment prior to the veteran's death, then there can be a later EJIA application. But if there's no final judgment, which there isn't in either one of these cases, then there can't be. That's the controlling issue here. There's no final judgment as things stand now because of the revisiting of amendment. Correct. There was, at one point, a final judgment in both cases. There was, at one point, a final judgment, which the veteran's court properly recalled because the veteran had died. But that's your opinion. But suppose we were to disagree and it was improper to recall and the judgment is there. Then there is a final judgment, right? If the recall of the judgment and mandate was improper, then yes, there would be a final judgment there. I also wanted to address briefly the issue of the substitution motion, which was unopposed in Phillips. It's true that that issue was not raised below, but the standing issue is a jurisdictional issue, which can be raised by the government at any time. At this point, we do assert that Ms. Harris has no standing to pursue the ANJA claim because she cannot be substituted on the merits of the case. Also... Well, what is the basis of... You keep saying maybe you're entirely right. I can't figure this out yet. But you seem to be saying, if I understand you correctly, unless the litigant can be substituted on the underlying claim, then they can't be substituted on the EJIA claim because the EJIA claim is interconnected with the underlying veteran's benefit claim. Do I have you right so far? That's correct. Okay. Now, what's the basis of saying that you have to win on both substitutions in order to have a viable EJIA claim? Where does that come from? Where do you get that? That comes specifically from the fact that this case, because under the EJIA statute, you need a final judgment to proceed on EJIA. And if we're assuming, which is our position, that the Veterans Court properly recalled the mandate and judgment, then there's no final judgment upon which anyone can file an EJIA application at this point. So the reason that substitution on the merits would be required here is that that's the only way that these veterans' cases could somehow proceed to a final judgment. Because then, if there was substitution, the individual substituted would be able to pursue the underlying merits case through to a final judgment and then, at that point, be able to file an EJIA application based upon that final judgment. Well, I thought we had a final judgment, as Judge Bryson observed. It's true that it got erased later. Maybe properly, maybe improperly, we'll have to decide, I suppose. But you make it sound like the final judgment is something that might arise in the future if there's a substitution, but it doesn't look like that's necessarily the case. No, you're correct in that there was a final judgment entered after the veteran's death in both cases, and that that judgment was then erased. So given that posture of the case, then someone else would have to get to a final judgment on the merits. Someone else would have to substitute in on the merits. In terms of whether it was proper... That sounds like you're saying, well, if I win, I win. If I win on the legality of what the Veterans Court did, then I win on everything down the line, too. But that's assuming, that's making a big assumption. Because the issue in the case is whether what the Veterans Court did was proper. You're assuming that it was proper. Well, if you persuade us, then maybe you win on everything down the line as well. But if we decide to the contrary, then it seems like your position falls apart. It is true that our case relies upon the issue of there not being a final judgment. We don't dispute that if there was a final judgment, then these cases could be pursued on the agent issue. If there was a final judgment before death, the Veterans Court properly recalled the mandate and recalled the judgment in these cases. As you mentioned earlier, or as the closing counsel mentioned earlier, this is an abuse of discretion standard in terms of recalling the mandate. The Veterans Court was simply following its established policy and the policy that had at least been approved by this court, not at this stage of proceedings, but the practice generally of dismissing and vacating an underlying board decision where the veteran died prior to the case submission. In terms of abuse of discretion, the Veterans Court was fully within discretion to do what it did to recall the mandate to avoid having a moved decision here because of the veteran's death. On the issue of the non-proton judgment, that was the same type of discretionary decision by the Veterans Court, which was proper under this court's decision in Pageant. In Pageant, on page 1370, this court specifically said that if there cannot be substitution on the merits, then a non-proton judgment is inappropriate. Therefore, the Veterans Court properly within its discretion declined to issue a non-proton judgment in this case. Therefore, without the mandate, without the judgment, then there's no final judgment and no basis for an EJ application. In terms of the merits of the EJ application, that's not an issue that is properly before this court. The merits of the EJ case would have to be decided in the first instance. Now, you have me very confused. I thought we had all sorts of precedents saying that a remand decision to the board equals a non-proton judgment. I thought we had all sorts of precedents saying  that a remand decision to the board equals prevailing party status. Not necessarily. Not every remand decision to the board equals prevailing party status. It has to be a remand decision based upon agency error. I thought we had a concession in these cases of agency error. That's why we had joint remand motions. Not everything that's error necessarily counts as agency error for a remand to confer prevailing party status on the veteran. For instance, in the Vaughn case, there was a remand to consider new evidence and there was a remand also to consider the effect of new legislation upon the case. Both of those were not in this case, which was for reasons and basis, inadequate reasons and basis in the board decision. Whether that particular type of... Which case are you referring to now? Phillips case. How about in Davis? In Davis, the remand had to do with the failure to comply with the previous remand order in terms of looking at the stressors and the reliance upon... Well, then in Davis, don't we have the secretary conceding that there was error in the board decision? And therefore, doesn't that implicate the authorities that say a remand based on agency error at the board is a prevailing result? Well, first of all, in Davis, the secretary did not although I believe... Wait a minute. Whether the veteran asked for it doesn't seem to be important. If the secretary says, I agree the board made a serious error and therefore I'm not going to fight this appeal. I'm asking the court to send it back and make the board do what they were supposed to do. How can that not trigger the cases to say that sort of remand is prevailing? Well, first of all, the secretary in Davis didn't say that it wanted a remand. The secretary filed a brief, which I believe did mention some errors, but it wasn't in the posture of the joint motion to remand as it was in Phillips. But turning to the other issue, that would be something that the board and the veterans court would have to consider because that would be an application of this court's law on prevailing party to the facts of this case. Whether this specific type of remand to make these determinations in Phillips, the remand, and then Macy's determination in Davis, the compliance with the previous remand order, that's something that would just be an application of the law to the facts of this case and something that the board and the veterans court would have to decide in the first instance before this court could make any determination. Well, if you're right in characterizing it, this court would never be allowed to say anything about it because it would be adjudicating the application of law to particular facts of the case, which is blatantly outside of our jurisdictional mandate under the 1988 statute. That's certainly likely that unless there was a legal issue raised by the board or veterans court's determination on this issue, it would be likely that this court would not review the EJA application on the merits and this court certainly cannot do so here before it's even discussed by the board or veterans court in the first instance. Before any legal issue has arisen, there's no question in this case about the EJA standards. It's just a question of applying them to this case and it's not, should not be considered here. What about the principle that mentioned in many of our cases that this entire adjudicatory system, starting with the RO and going through the board and going to the veterans court in limited ways coming here, is supposed to be veteran-friendly, easy to use, efficient, mostly non-adversarial. I guess not any longer so at the veterans court, but what about that whole principle that this is supposed to be simple and efficient and pro-veteran and so forth? Of course, here we don't have the veterans any longer, but they both died, but it's a little hard for me at least to see how in any way this system is efficient or friendly or clear from the perspective of the widow or the daughter of a now-deceased veteran. Well, your honor, in terms of whether it's fair to the veteran, that's not something I can address, but certainly the law sets up the system this way, but there is certainly a clear line that if the veterans court is supposed to do what it did here, which is dismiss the case, vacate the underlying board decision, and then the widow or daughter, in this case, can pursue an accrued benefits claim if there is such a claim available. In Phillips, it's admitted there isn't. In Davis, there doesn't appear to be the possibility of an accrued benefits claim under 5121, so there is certainly a way for the widow or daughter to pursue a claim under the system this way, and there's certainly a way to pursue an EJA claim if there is a final judgment. It's just in this case. But they have to start all over at the beginning of the process, right? They have to file a new claim and go to the RO, and then, you know, five years later, they'll be in the veterans court, and two years after that, they'll be here. That doesn't seem very friendly to the widow or the daughter of the now-deceased veteran. No, well, that has actually been changed by recent legislation, the new 5121A, which would allow an individual who qualified for accrued benefits to substitute into the veterans case at any point. Yeah, yeah, but that only applies to people who died since last October. All the veterans who died before last October are in a jam in terms of what their widows or orphans' children can do. Well, there is still a possibility of pursuing an under-tagit. If the case has been submitted, then the survivor can still substitute on the veterans claim. There's no question about that under-tagit, that if there's an available accrued benefits claim, and if the case has been submitted, then the survivor can be substituted. So not every survivor would have to go back to the very beginning. It's just if the case has not been submitted or if, as in Talia, it's clear that there would be no possibility of an accrued benefits claim, then those are the cases in which the person would have to go back. All right. Thank you. Mr. Shumkey, we'll hear your rebuttal. Thank you, Your Honor. I just have a couple of brief points that I want to touch on. Going back to the... Let me ask you a relevant question. Are you representing the relatives of the veteran on a pro bono basis as a part of some program? Not as a part of a program, but we are representing them pro bono, Your Honor. We're very fortunate to have lawyers. I don't see how laypeople could possibly negotiate their way through this minefield. It's hard enough with lawyers and judges. Kind of you to say, Your Honor, and I agree about the minefield. Just a couple of brief points. On the question that you had asked about Hyatt, I was fumbling for the legal standard and the language that Hyatt uses in between the two bookends that I was talking about are continuing relevance or an adverse effect. And so it really does sort of sound in traditional standing terms. I want to speak briefly to the last point that Ms. Haddisy raised, which was the Ejo merits claim sort of behind all of this. And there are a couple of key points on that. First of all, as to the prevailing party inquiry, that's a question of law. And it seems abundantly clear here that the remand orders that were entered are of the type that render a party prevailing in this court's decision. And Kelly makes that clear. The Davis decision talks about cases in which there wasn't actually error below. And I think Gurley may be another case that does likewise. And let's talk about changed circumstances or situations in which there really was no error below. Are you referencing the Vaughn case? That Ms. Haddisy mentioned the Vaughn case, which she accurately, which she correctly described as involving the new legislation. And I believe there was one other circumstance in Vaughn. But that's the category of cases you're talking about, right? That is the same category, Your Honor. And look at the name of both parties and see if we're talking about different cases or different categories. No, it doesn't matter. As long as we're talking about the same category of cases. We are talking about the same category. Davis versus Nicholson is one. And Gurley, G-U-R-L-E-Y, is another that I'm familiar with. And those are cases in which there wasn't really any error below. There was some new legislation passed or something like that. And we are worlds removed from anything like that here. We have two cases in which the secretary admitted that the board did something wrong. In Phillips, there was a joint motion for remand. In Davis, the secretary could not have been clearer, although it was not in a joint motion for remand. In the separate brief that the secretary filed, he affirmatively argued that there was error below and that a remand was appropriate to correct the error. So for purposes of prevailing party, there is absolutely no impediment to this court reaching that issue. On the question of whether the secretary's conduct or whether the government's conduct was substantially justified, that can in some cases become a factual inquiry. The critical fact here is that the government never made any argument about how anything it did was justified. EJA applications were filed below. And in Phillips, they didn't oppose. In Davis, the government opposed. They filed in opposition to the EJA application, but decided for whatever reason to make no argument about the substance of the EJA claims, but just to focus on these issues about pageant and substitution and whatever else. And that's their choice that they should be held to it. And so it seems to us there's no impediment to the court reaching the merits of the EJA application. That being said, and I want to be absolutely clear on this point, we don't have to win this issue in order to win and get a remand. It's something that this court can reach, and it's something that we think this court should reach. But vacater or reversal and remand for the Veterans Court to address in the first instance whether EJA fees should be awarded would be a perfectly appropriate outcome and wouldn't in any way prevent us from prevailing on the merits of the appeal here. So if the court has no further questions. Thank you very much.